IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES MICHAEL BECK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-10-566-D |
| | ) |
| MAYS HOME HEALTH, INC., | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

Before the Court is the Motion for Summary Judgment of Defendant Mays Home Health, Inc. [Doc. No. 27], filed pursuant to Fed. R. Civ. P. 56. Defendant seeks a judgment as a matter of law in this action under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, on claims that Plaintiff James Michael Beck was sexually harassed by a female coworker and that his employment was terminated in retaliation for complaining of the harassment. Plaintiff has timely opposed the Motion and, with his response brief, has submitted affidavits of his wife and friends. Defendant has filed a reply brief and a separate motion to strike two of the affidavits as immaterial and containing inadmissible hearsay.[1] *See* Amended Mot. Strike Affidavits of Jennie Hope & Lisa Beck [Doc. No. 42]. Both motions are fully briefed and at issue. In order to assess Defendant's argument that the information contained in the affidavits is irrelevant to the summary judgment issues, the Court begins by addressing the Motion for Summary Judgment.

---

[1] Defendant originally challenged the affidavits on the additional ground that they were unsworn. However, Plaintiff responded by asking to substitute sworn affidavits, which was permitted. *See* Pl.'s Amended Exhibits [Doc. No. 43].

## A.     Standard of Decision

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see also* Fed. R. Civ. P. 56(c). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

B.     **Statement of Material Facts**[2]

Plaintiff began his employment with Defendant as a community education coordinator in July, 2009. His job involved educating the public about home health care services, speaking with doctors and discharge planners about Defendant's services, and attempting to generate referrals for Medicare patients. In this position, Plaintiff's immediate supervisor was Terry Draper, Defendant's director of professional and clinical services and its marketing director, but Plaintiff worked closely with Brenda Goodnight, who was a branch supervisor in Defendant's Oklahoma City office, and Judy Lane, who was a regional supervisor. In July, 2009, Plaintiff signed a receipt indicating he had received Defendant's personnel policies, including its non-harassment grievance procedure. This written procedure stated that an employee who felt he or she had been harassed should report the harassment to his or her immediate supervisor or the human resources director, that complaints would be investigated as quickly as possible, and that appropriate remedial action would be taken. At no time did Plaintiff report Ms. Goodnight's sexual harassment to Ms. Draper or the human resources director.[3] It is disputed whether Plaintiff reported some incidents of harassment to Stan Sweeney, an executive director in Oklahoma, who was not his supervisor at the time.

---

[2] This statement includes facts presented by Defendant that are supported by the record and are either admitted or not opposed in the manner required by Rule 56, as well as facts presented by Plaintiff with record support. Any stated fact that is not supported by a party's citation to the record is disregarded. In assessing the affidavits submitted by Plaintiff, the Court will "disregard inadmissible hearsay statements contained in affidavits, as those statements could not be presented at trial in any form." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (emphasis omitted).

[3] This fact appears in Defendant's brief as stated fact number 54 and is properly supported. *See* Def.'s Mot Summ. J. [Doc. No. 27] at 11. Because Plaintiff makes no response to it, it is deemed to be undisputed pursuant to Rule 56(e)(2) and LCvR56.1(c). Plaintiff purports to deny another stated fact (number 42) that he never mentioned any sexual behavior to Ms. Draper, but he references his own statement of facts, which is supported by his testimony that he told her of "an HR-type complaint" regarding Ms. Goodnight. *See* Beck Dep. [Doc. No. 28-2] 60:8-22. Similarly, an attempt to dispute stated facts regarding a telephone call to the human resources director is supported only by Plaintiff's testimony that he called and asked how to make a complaint but gave no "details of what was going on." *See id*. 91:10-92:11.

Plaintiff has testified regarding several incidents involving Ms. Goodnight that he claims created a sexually hostile work environment. In September, 2009, Ms. Goodnight allegedly exposed her buttocks to Plaintiff to show him bruises she had received in a sexual encounter with her boyfriend, and made a suggestive comment to Plaintiff.[4] Ms. Goodnight allegedly had inappropriate telephone conversations with her boyfriend on a speaker phone in front of other employees – once, while employees were outside on a smoke break and, a second time, while Plaintiff was in her office.[5] Also, while a group of employees were outside on a smoke break, Ms. Goodnight stated she liked to judge men's "cock size" at meetings, and told Plaintiff he "rated out just fine." *See* Beck Dep. [Doc. No. 28-2] 68:1-7. She also spread rumors about a manager's alleged extra-marital affairs; Plaintiff understood some comments as a "dig" at him because he "hadn't messed with her yet." *See id*. 79:6-13.[6] On one occasion, while Plaintiff was leaning over a desk, Ms. Goodnight allegedly grabbed his buttock and said it was "tight." *See id*. 72:1-9.[7] The final incident occurred in late November or early December, 2009, when Ms. Goodnight allegedly told Plaintiff to stay in the office and help her clean a closet so they could be alone and "fool around." *See id*. 49:14-16.[8] Plaintiff did not help clean the closet because he called his supervisor, Ms. Draper, to complain about being required to stay and Ms. Draper told him she would take care of it.

---

[4] Plaintiff says he reported this incident to Mr. Sweeney approximately one month later on October 22, 2009.

[5] Plaintiff says he told Mr. Sweeney about these incidents.

[6] Plaintiff did not tell Mr. Sweeney about the "cock size" or rumor incidents.

[7] Plaintiff allegedly reported this incident to Mr. Sweeney.

[8] The alleged sexual harassment stopped in early December; "the last one was . . . her closet one." *See* Beck Dep. [Doc. No. 27-9] 88:22-25.

Defendant has submitted evidence that Plaintiff's supervisor, Ms. Draper, was dissatisfied with certain aspects of Plaintiff's job performance – primarily, accountability, clocking in and out, daily documentation, and daily communication with the branch office; this evidence includes personnel records reflecting discussion of these issues with Plaintiff on numerous occasions. Plaintiff denies knowing of any problems, other than two occasions when his time card was missing, and denies the authenticity of personnel records showing he was counseled by Ms. Draper and her superior, Wade Snow, about the performance issues. It is undisputed, however, that Ms. Draper received numerous complaints about Plaintiff from Ms. Lane, and that Mr. Snow was also informed by Ms. Lane about Plaintiff's alleged lack of communication with the Oklahoma City office.[9] Ms. Goodnight complained about these same issues. According to Mr. Snow, Plaintiff also expressed concern about his poor relationship with the Oklahoma City office, but Plaintiff denies making this statement.

Shortly before his termination, Ms. Draper decided to transfer Plaintiff to a new position of hospital liaison. According to Ms. Draper, she believed this change would give Plaintiff a chance to succeed, and would resolve his performance and communication issues. The position was similar to his existing marketing position, but would not require him to clock in and out from the Oklahoma City office and would place him under the supervision of Mr. Sweeney. The parties disagree whether Plaintiff agreed to clock in and out of the Yukon office or whether, according to Plaintiff, Mr. Snow said he could clock in "at whatever city or whatever town [he was] in." *See* Beck Dep. [Doc. No. 28-2] 116:20-23. The parties also dispute whether the change was a lateral transfer or a

---

[9] Plaintiff purports to deny these stated facts, but his denials are unsupported by his citations to the record; he references his deposition testimony denying that he was informed of any problems.

promotion. Plaintiff understood the hospital liaison position had a different pay structure that would enable him to earn a higher income, and thus, he viewed it as a promotion.

Ms. Draper decided to terminate Plaintiff's employment within days after his change of position because, in her opinion, the same issues immediately resurfaced.[10] In particular, Plaintiff did not comply with what Ms. Draper believed were his instructions to clock in at the Yukon office, but instead, he continued to clock in at the Oklahoma City office. Ms. Draper states that she did not know at the time of her decision that Plaintiff had complained to Mr. Sweeney about allegations of sexual harassment, and Plaintiff presents no facts that dispute Ms. Draper's lack of knowledge. Plaintiff relies solely on a conversation that allegedly occurred on December 22, 2009, when he and Ms. Draper were discussing a change of positions. According to Plaintiff, when Ms. Draper stated that he would still have contact with Ms. Goodnight, he expressed concern about their working relationship, and Ms. Draper reportedly responded with a statement to the effect that, "'Well, she's going through a divorce. Let's see if we can get through it.'" *See* Beck Dep. [Doc. No. 28-2] 90:15-21. To Plaintiff, this reference to Ms. Goodnight's failed marriage suggests Ms. Draper knew he had accused Ms. Goodnight of sexual misconduct. The Court finds no reasonable inference of such knowledge arises from this innocent remark.

Plaintiff denies that Ms. Draper made the termination decision. He contends Mr. Sweeney was the decision-maker because he informed Plaintiff of the decision and signed the termination letter. Ms. Draper explains these circumstances, however, with other facts that negate the inferences Plaintiff wishes to draw, and other witnesses corroborate her version of events. According to

---

[10] Plaintiff attempts to dispute that Ms. Draper was the decision maker because, as explained below, Mr. Sweeney delivered the termination letter and signed it. Aside from the inferences Plaintiff wishes to draw from these facts, however, Plaintiff lacks any factual support for his contention that Mr. Sweeney made the decision to terminate his employment.

Ms. Draper, after she made the decision to terminate Plaintiff, she prepared the termination letter and traveled to Oklahoma City from her office in Antlers, Oklahoma, to deliver it. After arriving in Oklahoma City on January 19, 2010, she spoke with Plaintiff by telephone and tried to arrange a meeting, but scheduling conflicts prevented them from meeting that day. Ms. Draper scheduled a meeting with Plaintiff for the following day and proceeded to a prior appointment in McAlester, planning to return from Antlers to the Yukon office on January 20, 2010. Later, however, Ms. Draper's boss told her not to make the drive a second time and, instead, to ask Mr. Sweeney to complete the termination. Ms. Draper contacted Mr. Sweeney and sent him the termination letter. Mr. Sweeney presented the letter to Plaintiff in the Yukon office on January 20, 2010. The letter bears that date and Mr. Sweeney's signature over a blank signature line for "Supervisor," and a blank signature line for Plaintiff; it also bears a handwritten notation by Mr. Sweeney that he met with Plaintiff and explained the termination but Plaintiff refused to sign the notification letter. Consistent with these facts, Plaintiff has testified that Ms. Draper told him on January 19 "she wanted to meet in Yukon on January 20. [Ms.] Draper didn't show up in Yukon on that day and [Plaintiff] was terminated" by Mr. Sweeney. See Pl.'s Resp. Br. [Doc. No. 28] at 13, ¶ 26-27.[11]

Plaintiff filed an EEOC charge concerning sexual harassment and retaliatory termination in March, 2010, and timely commenced this action after receiving notice of his right to sue. He now complains that he was sexually harassed by Ms. Goodnight, that he made internal complaints to Mr. Sweeney about the harassment, and that he was terminated in retaliation for his complaints.

---

[11] Because the Court finds no support for Plaintiff's position that Mr. Sweeney was the decision maker, the Court finds the additional facts and evidence that Plaintiff wishes to present about a secret affair between Mr. Sweeney and Ms. Goodnight are irrelevant to any summary judgment issues.

### C.   Defendant's Motion for Summary Judgment:

Defendant seeks summary judgment on Plaintiff's sexual harassment claim based on a lack of sufficient facts to establish such a claim. Defendant seeks summary judgment on Plaintiff's retaliation claim under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Defendant asserts that Plaintiff cannot establish a *prima facie* case of retaliation or establish that Defendant's performance-based reasons for terminating his employment were pretextual. Alternatively, Defendant seeks summary judgment on the issue of whether punitive damages are available under the circumstances.

### D.   *Quid Pro Quo* Sexual Harassment

Under federal case law, Title VII prohibits two types of gender discrimination commonly known as sexual harassment. One type, known as *quid pro quo* harassment, arises if tangible job benefits are conditioned on an employee's submission to demands for sexual favors. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 752 (1998). Defendant's Motion first challenges whether Plaintiff can recover under this theory because certain deposition testimony by Plaintiff concerning Ms. Goodnight's conduct toward him after he rebuffed her sexual advances might suggest such a claim. Plaintiff has responded to this challenge by denying that the Complaint asserts such a claim or that he intends to pursue this theory of recovery. Accordingly, the Court finds that no issue is presented for decision with regard to a claim of *quid pro quo* sexual harassment.

### E.   Hostile Work Environment Sexual Harassment

A second type of sexual harassment arises from a hostile work environment. Plaintiff claims he was subjected to a hostile work environment created by Ms. Goodnight's sexual conduct and remarks. Defendant challenges whether Plaintiff can prove sufficient facts to support such a claim.

A hostile work environment that violates Title VII is one involving harassment based on a prohibited factor, such as gender, that is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). "Severity and pervasiveness are evaluated according to the totality of circumstances, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993), considering such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). "[T]he environment must be both subjectively and objectively hostile or abusive." *MacKenzie v. City of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005). The fact-finder must "judge the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007); *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

In this case, Plaintiff contends that, during an approximately three-month period of his employment by Defendant, he was subjected to numerous incidents of sexual conduct and remarks by Ms. Goodnight in the Oklahoma City office. Plaintiff argues that Ms. Goodnight targeted him for inappropriate behavior in an effort to initiate a consensual sexual relationship, but he was offended by her behavior and rebuffed her unwelcome advances. He relies on numerous alleged instances: where Ms. Goodnight "dropped her pants" to show Plaintiff her bruised buttock; where she exposed others to personal conversations with her boyfriend regarding sexual encounters; where she described a game of judging males, including Plaintiff; where she grabbed and commented on Plaintiff's buttock; and where she asked Plaintiff to stay in the office to help her clean out a closet.

*See* Pl.'s Resp. Br. [Doc. No. 28] at 10-11.[12] Plaintiff contends these incidents impacted his working conditions because they made him extremely uncomfortable and affected his working relationships. For example, Plaintiff allegedly refused to meet with Ms. Goodnight alone in her office unless the door was left open. Plaintiff also contends that after he rebuffed Ms. Goodnight's advances, she became hostile and began making false complaints about his work.

Viewing the facts and evidence in the manner most favorable to Plaintiff, and giving him the benefit of all reasonable inferences as required by Rule 56, the Court finds that Plaintiff has made a minimally sufficient showing that he was subjected to a sexually hostile work environment. While it appears that a large part of Plaintiff's work activities occurred outside the Oklahoma City office, it also appears that his job duties required that he work closely with Ms. Goodnight on a regular basis. According to Defendant, their poor working relationship was one of the factors in Plaintiff's lack of success in his job as a community education coordinator. Accepting Plaintiff's testimony and evidence regarding Ms. Goodnight's sexual advances and suggestive conduct in the office, the Court simply cannot say that no reasonable jury could find Plaintiff was subjected to a work environment that was objectively and subjectively hostile due to his gender. While Plaintiff makes a weak showing regarding the objective severity of the alleged sexual harassment, the issue of objective severity is "quintessentially one of fact," *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007); it may be decided as a matter of law only where "the evidence falls short of the objective severity requirement." *Witt v. Roadway Exp.*, 136 F.3d 1424, 1433 (10th Cir. 1998); *see also*

---

[12] Plaintiff also refers to other facts, such as sexual text messages, that are not supported by the summary judgment record. He also presents evidence regarding hearsay statements to which he was not exposed during his employment, such as Ms. Goodnight's conversations with female coworkers.

*Trujillo v. University of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998); *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir.1994).

In summary, the Court finds that Plaintiff has demonstrated genuine disputes of material facts that preclude summary judgment on Plaintiff's sexual harassment claim based on a hostile work environment.

    **F.**    **Retaliation Claim**

"To prevail on a retaliatory discharge claim, a plaintiff must establish that the decision to terminate [him] resulted from retaliatory animus." *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549 (10th Cir. 1999). Plaintiff relies for proof of retaliatory motive on the familiar burden-shifting framework of *McDonnell Douglas*, under which he must first establish a *prima facie* case of retaliation. *See Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008) (explaining burden-shifting proof of retaliation claim). Following *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S.53, 67-68 (2006), the initial *prima facie* case is formulated as follows:

> To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.

*Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (footnote omitted); *accord Proctor v. United Parcel Service*, 502 F.3d 1200, 1208 (10th Cir. 2007). Once a plaintiff makes this initial showing, "[i]f the defendant is able to articulate a legitimate nondiscriminatory reason for the adverse action, the plaintiff must then show that the articulated reasons are a pretext for retaliation." *Medlock*, 164 F.3d at 550. Defendant challenges both Plaintiff's *prima facie* case and his proof of pretext.

Plaintiff has presented evidence, through his own sworn testimony, that he complained to Mr. Sweeney about Ms. Goodnight's alleged sexual harassment. It is well-established "that '[p]rotected opposition can range from filing formal charges to voicing informal complaints to superiors.'" *Fye*, 516 F.3d at 1228 (quoting *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004)). Thus, Plaintiff's alleged complaints to Mr. Sweeney could constitute protected activity. Because Plaintiff's termination clearly was an adverse employment action, the question with regard to his *prima facie* case is whether Plaintiff has come forward with sufficient facts to establish a causal connection between his complaints to Mr. Sweeney and his termination.

The court of appeals has explained this element of a *prima facie* case as follows:

> "A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (quotation omitted). Standing alone, temporal proximity between the protected activity and the retaliatory conduct must be very close in time. Otherwise, "the plaintiff must offer additional evidence to establish causation." *Id*.

*Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). For this purpose, "a one and one-half month period between protected activity and adverse action may, by itself, establish causation," [but] "a three-month period, standing alone, is insufficient to establish causation." *Anderson*, 181 F.3d at 1179. Further, to establish a causal connection, the plaintiff must show the decision-maker in the adverse action – here, termination – knew of the employee's protected activity. *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007); *see also Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).

Plaintiff relies solely on close temporal proximity to establish a causal connection between his sexual harassment complaints and his termination. Plaintiff points to his repeated complaints

to Mr. Sweeney and his telephone call to the human resources department on January 18, 2010. Plaintiff's argument overstates the record facts. There is no indication that the January 18 telephone call constituted a sexual harassment complaint or that anyone other than the human resources director knew of it. More importantly, as stated above, the Court finds that Plaintiff has failed to come forward with facts to show that Mr. Sweeney made the decision to terminate Plaintiff's employment or that the decision maker, Ms. Draper, knew of any sexual harassment complaints. In short, Plaintiff's arguments of a connection between his complaints to Mr. Sweeney and Ms. Draper's decision are unsupported by the summary judgment record. Accordingly, while Plaintiff denies Defendant's performance-based reasons for terminating his employment, the Court finds this factual dispute is immaterial because Plaintiff's retaliation claim fails at the third element of a *prima facie* case. Plaintiff lacks evidence of any connection between his alleged protected activity and the termination of his employment.

Viewing the summary judgment record most favorably toward Plaintiff, as required by Rule 56, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material facts regarding his claim of retaliatory discharge. Plaintiff has failed to present sufficient facts from which a causal connection between any sexual harassment complaint and his subsequent termination could reasonably be inferred. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

**G.     Punitive Damages**

Because Plaintiff's sexual harassment claim remains for trial, the Court must also consider Defendant's request for summary judgment on the issue of punitive damages. Under Title VII, punitive damages are recoverable only if an employer engages in discrimination "with malice or with

reckless indifference to [the plaintiff's] federally protected rights." *See* 42 U.S.C. § 1981a(b)(1). "'Malice' or 'reckless indifference' do not require 'a showing of egregious or outrageous' conduct, but instead require proof that the employer acted 'in the face of a perceived risk that its actions [would] violate federal law.'" *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1136 (10th Cir. 2006) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 543 (1999)). In the context of a sexual harassment claim, "before a company is held liable for punitive damages for acts of harassment by low-level employees, there must be some culpability beyond mere negligence at the management level." *Id*. (internal quotation omitted, emphasis omitted). "Thus, an employer is vicariously liable for punitive damages where an employee serving in a 'managerial capacity' committed the wrong while 'acting in the scope of employment.'" *Id*. (internal quotation omitted).

In this case, Plaintiff has not come forward with sufficient facts to suggest any malice or reckless indifference by Defendant's management-level employees with respect to any sexual harassment perpetrated by Ms. Goodnight. While Plaintiff contends he reported most incidents of misconduct to Mr. Sweeney and that Mr. Sweeney did nothing, Plaintiff presents no facts to suggest that Mr. Sweeney's inaction constituted more than negligence or, more importantly, that Mr. Sweeney was a managerial employee responsible for complaints of sexual harassment. Defendant's written policy assigned the task of responding to such complaints to either the complaining employee's supervisor or the director of human resources. The undisputed facts establish that Mr. Sweeney was neither; Ms. Draper was Plaintiff's supervisor at the time of his alleged complaints. Although Plaintiff has testified that Ms. Draper told him he could discuss an "HR-type complaint" regarding Ms. Goodnight with Mr. Sweeney, the Court finds that Plaintiff's suggested inference – that this comment constituted a delegation of her authority to address a sexual

harassment complaint – is not a reasonable one. Plaintiff has failed to come forward with any facts to establish that Mr. Sweeney's alleged failure to remedy Plaintiff's complaints was a culpable wrong, committed while acting within the scope of his managerial authority.

In short, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material facts with regard to the potential recovery of punitive damages on his sexual harassment claim. Therefore, Defendant is entitled to summary judgment on this issue.

### H.      Motion to Strike Plaintiff's Affidavits

Defendant contends that the affidavits of Jennie Hope, Plaintiff's coworker, and Lisa Beck, Plaintiff's wife, contain information that is irrelevant, and includes inadmissable hearsay statements. Under the Court's analysis, Defendant is correct, and the Court has properly disregarded this information. *See supra* note 2.[13] However, Defendant also asserts that Plaintiff submitted the affidavits in bad faith, for the sole purpose of embarrassing Ms. Goodnight and Mr. Sweeney. Defendant asks that the affidavits be stricken from the record and that sanctions be imposed under Fed. R. Civ. P. 56(h). While the Court agrees with Defendant that most of the information contained in the affidavits is immaterial or indadmissible, the Court is not convinced that they were "submitted in bad faith or solely for delay," as provided by Rule 56(h). Therefore, the Court finds that no sanction is waranted.

### Conclusion

For these reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's retaliation claim and the issue of punitive damages. However, genuine disputes of

---

[13] Any relevant statements that Ms. Goodnight made to Ms. Hope clearly could not be admitted for their truth under Fed. R. Evid. 801(d)(2), as argued by Plaintiff.

material facts preclude summary judgment on Plaintiff's claim of sexual harassment, which remains for trial.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 27] is GRANTED in part and DENIED in part, as set forth herein.

IT IS FURTHER ORDERED that Defendant's Amended Motion to Strike Affidavits of Jennie Hope and Lisa Beck [Doc. No. 42] is GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 29th day of March, 2012.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE